| | |
|---|---|
| DISTRICT COURT OF THE 18th JUDICIAL DISTRICT, ARAPAHOE COUNTY, STATE OF COLORADO<br>Court Address: 7325 S. Potomac St., Centennial, CO 80112<br>Phone Number: 303-645-6600 | DATE FILED<br>August 19, 2025 1:37 PM<br>FILING ID: CAE754BCD4390<br>CASE NUMBER: 2025CV31966 |
| Plaintiff:<br>**Alisha York as natural mother of Clara York, a minor**<br>v.<br>Defendants:<br>**UA Attractions, LLC**, | ▲ Court Use Only ▲ |
| Plaintiff's Attorneys:<br><br>Jason B. Wesoky #34241<br>OGBORN MIHM, LLP<br>1700 Lincoln St., Suite 2700<br>Denver, CO 80203<br>Phone:  303-592-5900<br>Email:  Jason.wesoky@omtrial.com<br><br>Eric M. Pizzuti, Esq. #40552<br>THE PIZZUTI LAW FIRM, LLC<br>650 South Cherry Street, Suite 1000<br>Denver, Colorado 80246<br>Phone:    720-389-5282<br>Facsimile: 720-235-0248<br>Email:    epizzuti@pizzutilawfirm.com | Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, through undersigned counsel, sues defendant UA Attractions, LLC and alleges as follows:

<u>PARTIES</u>

1

1.      Plaintiff Alisha York is the natural mother and next best friend of Clara York, a minor, and is a resident of Colorado.

2.      Clara York is a minor and a resident of Colorado.

3.      Defendant UA Attractions, LLC is a limited liability company organized under the laws of Texas with its principal place of business in Texas.

4.      Upon information and belief, Defendant UA Attractions, LLC entered into a purchase and installation agreement with Urban Air trampoline parks, including the Urban Air location in Littleton, Colorado where the incident occurred.

5.      Upon information and belief, Defendant UA Attractions, LLC derives substantial revenues from business conducted in Colorado by supplying, installing, and selling various trampoline park rides and attractions at various Urban Air locations throughout Colorado.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this lawsuit pursuant to Colorado law because this case involves a tort that occurred in Colorado.

7.      This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the privilege of conducting business in Colorado and committed tortious acts in Colorado that caused injury to Colorado residents.

8.      Venue is proper in this Court because the events giving rise to this action occurred in Arapahoe County, Colorado.

## FACTUAL ALLEGATIONS

9.      Urban Air operates a franchise system of trampoline parks across the country, including a location in Littleton, Colorado.

10.     The Littleton Urban Air trampoline park included an obstacle known as "Wipe Out" that was designed, manufactured, installed, and/or supplied by Defendant UA Attractions, LLC.

11.     The Wipe Out obstacle is a trampoline-based attraction that requires children to attempt dangerous airborne acrobatic maneuvers while a rotating arm moves around in a 360-degree fashion.

12.     The Wipe Out obstacle specifically requires participants to attempt highly dangerous activities including jumping or flipping over the attraction's rotating arms, ducking or diving under the arms as they pass, and dodging them by jumping laterally.

2

13.     At all times material to this action, Defendant was aware that the Wipe Out obstacle was dangerous and had caused injuries to people at other similar trampoline parks, including other Urban Air locations before Plaintiff was injured.

14.     The Wipe Out obstacle had caused serious injuries at multiple locations prior to Clara York's injury, including:

a. A man was paralyzed in 2019 on the Wipe Out obstacle at a Kansas trampoline park;

b. A child was injured in Tampa, Florida on the Wipe Out obstacle;

c. In November 2020, a child was injured at an Urban Air location in Arkansas on the Wipe Out obstacle, with injuries that will stunt the child's growth;

d. A young child in Chicago was injured on the Wipe Out obstacle on April 1, 2022.

15.     On June 2, 2022, Clara York was injured on the Wipe Out obstacle at the Littleton Urban Air location.

16.     As a result of using the Wipe Out obstacle, Clara York broke her lower leg/ankle/foot.

17.     The fracture cuts across one of Clara York's growth plates and required major surgery that included screws and plates.

18.     At all times relevant hereto, Clara York was acting reasonably and prudently in using the Wipe Out obstacle as it was designed and intended to be used.

19.     Clara York's injuries were caused by defects in the design and manufacture of the Wipe Out obstacle.

COUNT I - STRICT LIABILITY FOR DEFECTIVE DESIGN

20.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

21.     At all times material to this action, Defendant was in the business of designing, manufacturing, assembling, installing, promoting, marketing, distributing, and/or supplying the Wipe Out obstacle and similar trampoline park attractions.

22.     Defendant designed, manufactured, assembled, installed, promoted, marketed, distributed, and/or supplied the Wipe Out obstacle, which is the subject of this Complaint.

3

23.     The Wipe Out obstacle was expected to, and did, reach users without substantial change in the condition in which it was designed, manufactured, and/or supplied by Defendant.

24.     The Wipe Out obstacle was in a defective condition and unreasonably dangerous to foreseeable users, including minors like Clara York.

25.     The Wipe Out obstacle was defective in design because:

a. It required users to perform highly dangerous airborne acrobatic maneuvers;

b. It created an unreasonable risk of harm that could have been reduced or avoided by the adoption of a reasonable alternative design;

c. The risks of harm posed by the design outweighed the benefits of the design;

d. A safer alternative design was feasible and available that would have prevented or significantly reduced the risk of injury without substantially impairing the product's utility.

26.     Defendant was aware that the Wipe Out obstacle, as designed and manufactured, was defective and unreasonably dangerous based on the history of injuries at similar installations.

27.     The defects and dangers of the Wipe Out obstacle were unknown to Clara York and her mother.

28.     As a direct and proximate result of the defective and unreasonably dangerous design of the Wipe Out obstacle, Clara York sustained serious and permanent injuries.

## COUNT II - STRICT LIABILITY FOR FAILURE TO WARN

29.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

30.     Defendant had a duty to provide adequate warnings and instructions about the risks, dangers, and harms associated with the Wipe Out obstacle and reasonable means to reduce such risks, dangers and harms.

31.     The Wipe Out obstacle lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms that could result from its use.

32.     Defendant knew or should have known of the risks and dangers associated with the Wipe Out obstacle based on the history of serious injuries at other installations.

33.     Defendant failed to warn Clara York or her mother of the defects or dangers inherent in the Wipe Out obstacle.

34.     Had adequate warnings been provided, Clara York would not have used the Wipe Out obstacle, or would have used it differently, and her injuries would have been prevented.

35.     As a direct and proximate result of Defendant's failure to provide adequate warnings, Clara York sustained serious and permanent injuries.

## COUNT III - NEGLIGENCE

36.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

37.     At all times relevant to this cause of action, Defendant was in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing various trampoline park rides and attractions, including Wipe Out.

38.     Defendant designed, manufactured, marketed, inspected, labeled, promoted, distributed, and/or sold the Wipe Out that injured Plaintiff.

39.     Defendant had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of Wipe Out so as to avoid exposing others, including Plaintiff, to foreseeable and unreasonable risks of harm.

40.     Defendant knew or should have known that Wipe Out was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

41.     At the time of manufacture, sale, and/or installation of Wipe Out at the Urban Air location in Littleton, Colorado, Defendant knew or should have known that Wipe Out:

   a. Was designed and manufactured in such a manner so as to present an unreasonable risk of injury to users of Wipe Out;

   b. Was designed and manufactured so as to present an unreasonable risk of injury;

   c. Was designed and manufactured in such a manner that injury was more likely to occur than other trampoline park rides and attractions;

   d. Was designed and manufactured in a way to increase the risk of injury to small landing areas, landing areas that were not suited for jumping;

e. Was originally designed not for trampoline landing areas but rather for inflatable bouncy-castle type landing areas.

42. At the time of manufacture, sale, and or installation of Wipe Out, Defendant knew or should have known that using Wipe Out in its intended use or in a reasonably foreseeable manner created a significant risk of users suffering severe injuries, including, but not limited to: fractures, paralysis, sprains, strains, concussions, and other severe personal injuries, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by Wipe Out; and the continued risk of requiring additional medical and surgical procedures.

43. Defendant knew or should have known that uses of Wipe Out would not realize the danger associated with using it in its intended use and/or in a reasonably foreseeable manner.

44. Defendant breached its duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, installation, and sale of Wipe Out in, among others, the following ways:

a. Designing and distributing a product which Defendant knew or should have known that the likelihood and severity of potential harm from Wipe Out exceeded the burden of taking safety measures to reduce or avoid harm;

b. Designing and distributing Wipe Out which it knew or should have known that the likelihood and severity of potential harm from it exceeded the likelihood of potential harm from other trampoline park attractions/rides available for the same purpose;

c. Failing to use reasonable care to warn or instruct, including pre- and post-sale, Plaintiff or the general public that comes to Urban Air trampoline parks about Wipe Out's substantially dangerous condition or about facts making it likely to be dangerous;

d. Failing to perform reasonable pre- and post-market testing of Wipe Out to determine whether or not it was safe for its intended use;

e. Failing to provide adequate instructions, guidelines, and safety precautions, including pre- and post-sale, to those persons to whom it was reasonably foreseeable would use Wipe Out;

    f.   Advertising, marketing, and recommending Wipe Out while concealing and failing to disclose or warn of the dangers known by Defendant to be connected with and inherent in the use of Wipe Out;

    g.   Representing that Wipe Out was safe for its intended use when, in fact, Defendant knew and should have known it was not safe for its intended purpose;

    h.   Continuing to manufacture, sell, install, and market Wipe Out with the knowledge that it was dangerous and not reasonably safe;

    i.   Failing to use reasonable and prudent care in the design, research, manufacture, installation, marketing, and development of Wipe Out so as to avoid the risk of serious harm associated with use of Wipe Out;

    j.   Failing to establish an adequate quality-assurance program used in the manufacturing, installation, and use of Wipe Out; and,

    k.   Failing to establish and maintain an adequate post-market surveillance program.

45.    A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

46.    As a direct and proximate result of the foregoing negligent acts and omissions by Defendant, Plaintiff has suffered a serious injury.

<u>DAMAGES</u>

47.    As a direct and proximate result of Defendant's conduct, Clara York has suffered and will continue to suffer:

a. Serious and permanent physical injuries;

b. Physical pain and suffering;

c. Mental anguish and emotional distress;

d. Medical expenses, both past and future;

e. Loss of enjoyment of life;

f. Physical impairment;

g. Other damages to be proven at trial.

48.     The injuries sustained by Clara York are permanent and will affect her for the remainder of her life.

## DEMAND FOR JURY TRIAL

49.     Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff Alisha York, as natural mother of Clara York, a minor, respectfully requests that this Court:

A. Award compensatory damages in an amount to be determined at trial;

B. Award costs and reasonable attorneys' fees as permitted by law;

C. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

## COUNT I
## <u>NEGLIGENCE</u>

50.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

51.     At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Gunther Tulip™ filter.

52.     The Cook Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed, and sold the Gunther Tulip™ filter that was implanted in Plaintiff.

53.     The Cook Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of the Gunther Tulip™ filter so as to avoid exposing others, including Plaintiff, to foreseeable and unreasonable risks of harm.

54.      The Cook Defendants knew or should have known that the Gunther Tulip™ filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

55.      At the time of manufacture and sale of the Gunther Tulip™ filter (2000 until Present), the Cook Defendants knew or should have known that the Gunther Tulip™ filter:

  a. Was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

  b. Was designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device;

  c. Was designed and manufactured so as to present an unreasonable risk of the device tilting and/or perforating the vena cava wall; and/or

  d. Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

  e. There were no clinical trials which adequately established the efficacy of filter in preventing pulmonary embolisms.

56.      At the time of manufacture and sale of the Gunther Tulip™ filter (2000 until Present), the Cook Defendants knew or should have known that using the Gunther Tulip™ filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; cardiac/pericardial tamponade; thrombus, cardiac arrhythmia and other symptoms similar to myocardial infraction; perforations of tissue, vessels, and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness

9

proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with the attendant risk of life threatening complications.

57.    The Cook Defendants knew or should have known that consumers of the Gunther Tulip™ filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

58.    The Cook Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of the Gunther Tulip™ filter in, among others, the following ways:

> a. Designing and distributing a product which the Cook Defendants knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;
>
> b. Designing and distributing a product which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose;
>
> c. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;
>
> d. Failing to use reasonable care to warn or instruct, including pre- and post-sale, Plaintiff, Plaintiff's physicians, Plaintiff's agents, or the general healthcare community about the Gunther Tulip™ filter's substantially dangerous condition or about facts making the product likely to be dangerous;
>
> e. Failing to perform reasonable pre- and post-market testing of the Gunther Tulip™ filter to determine whether or not the product was safe for its intended use;

f.  Failing to provide adequate instructions, guidelines, and safety precautions, including pre- and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Gunther Tulip™ filter;

g.  Advertising, marketing, and recommending the use of the Gunther Tulip™ filter, while concealing and failing to disclose or warn of the dangers known by Cook Defendants to be connected with and inherent in the use of the Gunther Tulip™ filter;

h.  Representing that the Gunther Tulip™ filter was safe for its intended use when, in fact, the Cook Defendants knew and should have known the product was not safe for its intended purpose;

i.  Continuing to manufacture and sell the Gunther Tulip™ filter with the knowledge that the product was dangerous and not reasonably safe;

j.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Gunther Tulip™ filter so as to avoid the risk of serious harm associated with the use of the Gunther Tulip™ filter;

k.  Advertising, marketing, promoting, and selling the Gunther Tulip™ filter for uses other than as approved and indicated in the product's label;

l.  Failing to establish an adequate quality-assurance program used in the manufacturing of the Gunther Tulip™ filter; and,

m.  Failing to establish and maintain an adequate post-market surveillance program.

59.    A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

60.    As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss have yet to be determined.

## COUNT II
## STRICT PRODUCTS LIABILITY - FAILURE TO WARN

61.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

11

62.    The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Gunther Tulip™ filter, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

63.    At the time the Cook Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the Cook Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.  Specifically, the Cook Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the Gunther Tulip™ filter, which was implanted into Plaintiff, that the Gunther Tulip™ filter, *inter alia*, posed a significant and higher risk than other similar devices of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting in serious injuries.

64.    Consequently, the Cook Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

65.    The Cook Defendants Cook further had a duty to warn of dangers and proper safety instructions that they became aware of even after the device was distributed and implanted in Plaintiff.

66.    Despite their duties, the Cook Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Gunther Tulip™ filter, and further failed to adequately provide instructions on the safe and proper use of the device. These failures rendered the Cook filter unreasonably dangerous to Plaintiff.

67.    No health care provider, including Plaintiff's, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

68.    The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

69.    Plaintiff and Plaintiff's healthcare providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

70.    Therefore, the Gunther Tulip™ filter implanted into Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling, and/or instructions accompanying the product.

71.    The Gunther Tulip™ filter implanted into Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed, and sold by the Cook Defendants.

72.    As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss have yet to be determined.

13

## COUNT III
## STRICT PRODUCTS LIABILITY - DESIGN DEFECT

73.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

74.    At all times relevant to this action, the Cook Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed, and sold into the stream of commerce the Gunther Tulip™ filter, including the one implanted in Plaintiff.

75.    The Gunther Tulip™ filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left the Cook Defendants possession.  In the alternative, any changes that were made to Gunther Tulip™ filter implanted in Plaintiff were reasonably foreseeable to the Cook Defendants.

76.    The Gunther Tulip™ filter implanted in Plaintiff was defective in design because it failed to perform as safely as persons who ordinarily use the product would have expected at the time of use.

77.    The Gunther Tulip™ filter implanted in Plaintiff was defective in design in that its risks of harm exceeded its claimed benefits.

78.    The Cook Defendants knew that safer alternative designs were available, which would have prevented or significantly reduced the risk of the injury presented by the Gunther Tulip™ filter.  Further, it was economically and technologically feasible at the time the filter left the control of the Cook Defendants to prevent or reduce the risk of such a dangerous event by application of existing, or reasonably achievable, scientific knowledge.

14

79.     Plaintiff and Plaintiff's healthcare providers used the Gunther Tulip™ filter in a manner that was reasonably foreseeable to the Cook Defendants.

80.     Neither Plaintiff, nor Plaintiff's healthcare providers, could have, by the exercise of reasonable care, discovered the device's defective condition or perceived its unreasonable dangers prior to Plaintiff's implantation with the device.

81.     The defective design of the Gunther Tulip™ filter was a producing cause of Plaintiff's injuries.

82.     As a result of the Gunther Tulip™ Filter's defective design, Plaintiff has suffered and will continue to suffer serious medical complication for which the solution and ultimate economic loss have yet to be determined.

**COUNT IV**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

83.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

84.     The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Gunther Tulip™ filter that was implanted into Plaintiff.

85.     The Gunther Tulip™ filter implanted in Plaintiff contained a condition or conditions, which the Cook Defendants did not intend, at the time it left the Cook Defendants' control and possession.

86.     Plaintiff and Plaintiff's healthcare providers used the device in a manner that was reasonably foreseeable to Cook Defendants.

15

87.     As a result of this condition or these conditions, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

88.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss have yet to be determined.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

89.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

1.     At all times relevant to this action, the Cook Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Gunther Tulip™ and Celect IVC filters for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

90.     At the time and place of sale, distribution, and supply of the Cook Gunther Tulip™ IVC filter to Plaintiff by way of Plaintiff's healthcare providers and medical facilities, the Cook Defendants expressly represented and warranted, by labeling materials submitted with the product, that the Cook filter was safe and effective for its intended and reasonably foreseeable use.

16

91.     The Cook Defendants knew of the intended and reasonably foreseeable use of the Gunther Tulip™ filter at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

92.     The Cook Defendants impliedly represented and warranted to the healthcare community, Plaintiff and Plaintiff's healthcare providers, that the Gunther Tulip™ filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

93.     The representations and implied warranties made by the Cook Defendants were false, misleading, and inaccurate because the Gunther Tulip™ filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at the time of Plaintiff's purchase of the Gunther Tulip™ IVC filter from the Cook Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

a.     It was designed in such a manner so as to be prone to an unreasonably high rate of failure, including fracture, migration, excessive tilting, causing thrombosis and/or perforation of bodily organs;

b.     It was designed in such a manner so as to result in an unreasonably high rate of injury to the organs and anatomy; and,

c.     It was manufactured in such a manner so that the Gunther Tulip™ filter system was inadequately, improperly and inappropriately prepared and/or finished, so as to be prone to an unreasonably high rate of failure and/or causing the device to fail.

94.     Plaintiff and Plaintiff's healthcare providers reasonably relied on the superior skill and judgment of the Cook Defendants as the designers, researchers and manufacturers

of the product, as to whether the Gunther Tulip™ filter was of merchantable quality, safe and fit for its intended use and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Gunther Tulip™ IVC filter was manufactured and sold.

95.    The Cook Defendants placed the Gunther Tulip™ filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Gunther Tulip™ filter was manufactured and sold.

96.    The Cook Defendants breached their implied warranty because their Gunther Tulip™ filter was not fit for its intended use and purpose.

97.    As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss have yet to be determined.

**COUNT VI**
**FRAUD AND NEGLIGENT MISREPRESENTATION**

98.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

99.    At all times relevant to this cause, and as detailed above, the Cook Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the Gunther Tulip™ filter, including, but not limited to, misrepresentations relating to the following subject areas:

18

      a. safety of the Gunther Tulip™ filter;

      b. efficacy of the Gunther Tulip™ filter;

      c. rate of failure of the Gunther Tulip™ filter; and,

      d. approved uses of the Gunther Tulip™ filter.

100. The information distributed by the Cook Defendants to the public, the medical community and Plaintiff's healthcare providers was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, which were false and misleading, and omitted and concealed the truth about the dangers of the use of the Gunther Tulip™ filter. These materials included instructions for use and warning document that was included in the package of the Gunther Tulip™ filter that was implanted into Plaintiff.

101. The Cook Defendants' intent and purpose in making these representations was to deceive and defraud the public and the medical community, including Plaintiff's healthcare providers and Plaintiff's agents; to gain the confidence of the public and the medical community, including Plaintiff's healthcare providers and Plaintiff's agents; to falsely assure them of the quality of the Gunther Tulip™ filter and its fitness for use; and to induce the public and the medical community, including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use the Gunther Tulip™ filter.

102. The foregoing representations and omissions by the Cook Defendants were in fact false. The Gunther Tulip™ filter is not safe, fit, and effective for human use in its intended and reasonably foreseeable manner. The use of the Gunther Tulip™ filter is

hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered. Further, the device has a significantly higher rate of failure and injury than do other comparable devices.

103.    In reliance upon the false and negligent misrepresentations and omissions made by the Cook Defendants, Plaintiff, Plaintiff's agents, and Plaintiff's healthcare providers were induced to, and did use the Gunther Tulip™ filter, thereby causing Plaintiff to sustain severe and permanent personal injuries.

104.    The Cook Defendants knew and had reason to know that Plaintiff, Plaintiff's healthcare providers, Plaintiff's agents, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by the Cook Defendants, and would not have prescribed and implanted same if the true facts regarding the device had not been concealed and misrepresented by the Cook Defendants.

105.    The Cook Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Gunther Tulip™ filter.

106.    At the time the Cook Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Gunther Tulip™ filter, Plaintiff,

Plaintiff's healthcare providers and the Plaintiff's agents were unaware of said the Cook Defendants' intentional and negligent misrepresentations and omissions.

107.    Plaintiff's healthcare providers, Plaintiff's agents, and the general medical community reasonably relied upon the foregoing misrepresentations and omissions made by the Cook Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Gunther Tulip™ filter.

108.    Plaintiff's healthcare providers and Plaintiff's agents' reliance on the foregoing misrepresentations and omissions by the Cook Defendants was the direct and proximate cause of Plaintiff's injuries as described herein.  As a result of the Cook Defendants' misrepresentations and omissions, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PUNITIVE DAMAGES CLAIM

109.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

110.    Plaintiff is entitled to an award of punitive and exemplary damages based upon the Cook Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total disregard for the public safety and welfare.

111.    The Cook Defendants had knowledge of, and were in possession of evidence demonstrating that, the Gunther Tulip™ filter was defective, unreasonably dangerous, and

had a substantially higher failure rate than did other similar devices on the market. Despite their knowledge, the Cook Defendants failed to, among other purposeful acts, inform or warn Plaintiff, Plaintiff's agents, or her healthcare providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall the Gunther Tulip™ filter from the market.

112.    As a direct, proximate, and legal result of the Cook Defendants' acts and omissions as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff, PATSY WICKIZER, prays for relief on the entire complaint, as follows:

a.    Judgment to be entered against all Cook Defendants on all causes of action of this Complaint, including but not limited to:

1.    Physical pain and suffering in the past and which, in reasonable probability, she will continue to suffer in the future;

2.    Physical impairment and incapacity in the past and which, in reasonable probability, she will continue to suffer in the future;

3.    Mental anguish in the past and which, in reasonable probability, she will sustain in the future;

4.    Reasonable and necessary medical expenses for treatment received in the past and, based upon reasonable medical probability, the reasonable medical expenses she will need in the future;

5.    Disfigurement in the past and which, in reasonable probability, she will continue to suffer in the future; and,

6.      Punitive damages.

b.      Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

c.      Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post judgment interest pursuant to the laws of the State of Nebraska as authorized by law on the judgments entered in Plaintiff's behalf; and,

d.      Such other relief the court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues.

DATED August 19, 2025

OGBORN MIHM, LLP

*/s/ Jason B. Wesoky*
Jason B. Wesoky, Reg. No. 34241

Eric M. Pizzuti, Esq. #40552
THE PIZZUTI LAW FIRM, LLC

*Attorneys for Plaintiff*